IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSICA M. PROANO,

        Plaintiff,

vs.                                                                                                                       1:20-cv-00085-JB-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
ON MOTION TO REVERSE AND REMAND FOR A REHEARING**

THIS MATTER comes before the Court on plaintiff Jessica M. Proano's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 19), which was fully briefed on September 28, 2020. *See* Docs. 21, 24, 25. Pursuant to 28 U.S.C. §§ 636(b)(1)(B), (b)(3), the Honorable James O. Browning referred this matter to me for a recommended disposition. Doc. 7. Having meticulously reviewed the entire record and being fully advised in the premises, I recommend that the Court GRANT Ms. Proano's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case, AR 9.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks, brackets, and quotation omitted). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (quotation omitted). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III.     Background and Procedural History

Ms. Proano was born in 1982, graduated from high school, and worked as a woodcutter, a laborer, a security officer, and a retail stocker.  AR 234, 266.[3]  She filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 16, 2014, alleging disability since April 1, 2013 due to hypoglycemia, obsessive compulsive disorder ("OCD"), and a learning disability.  AR 234–43, 265. The Social Security Administration

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 14-1 through 14-15 are the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

("SSA") denied her claims initially on December 4, 2014. AR 162–69. The SSA denied her claims on reconsideration on April 12, 2015. AR 173–77. Ms. Proano requested a hearing before an ALJ. AR 178–79. On March 13, 2017, ALJ Frederick Upshall, Jr. held a hearing. AR 60–99. ALJ Upshall issued his unfavorable decision on May 2, 2017. AR 32–58. On May 4, 2017, Ms. Proano requested review of the ALJ's unfavorable decision by the Appeals Council. AR 233. On February 6, 2018, the Appeals Council denied the request for review. AR 1198–1203. On April 5, 2018, Ms. Proano asked the Appeals Council to reopen the claim so she could submit medical evidence. AR 1250. The Appeals Council found no reason to reopen the case or change the decision. AR 1204–05. Ms. Proano filed her first appeal to this Court on June 28, 2018. *Proano v. Berryhill*, No. 18cv612-KRS, Doc. 1 (D.N.M. June 28, 2018).

After Ms. Proano filed her first Motion to Remand to Agency with Supporting Memorandum, the Commissioner filed an Unopposed Motion to Remand to Agency Under Sentence Four of 42 U.S.C. § 405, which the Court granted. *Id.*, Docs. 20, 22, 23. On remand, the Appeals Council directed the ALJ to: (1) "[f]urther evaluate [Ms. Proano's] mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a"; (2) further consider Ms. Proano's maximum RFC, taking care to "provide appropriate rationale with specific references to evidence of record in support of the assessed limitations"; and (3) consult with a VE "to clarify the effect of the assessed limitations on [Ms. Proano's] occupational base" while resolving any conflicts between identified jobs and the DOT's descriptions of the jobs. AR 1217–19.

On October 21, 2019, ALJ Jennifer Fellabaum held a second hearing. AR 1129–70. ALJ Fellabaum issued a second unfavorable decision on November 29, 2019. AR 1097–1128. The ALJ found that Ms. Proano met the insured status requirements of the Social Security Act

through March 31, 2017. AR 1103. At step one, the ALJ found that Ms. Proano had not engaged in substantial, gainful activity since April 1, 2013, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Proano suffered from the severe impairments of intellectual disability, depression, anxiety, OCD, post-traumatic stress disorder, post-prandial hypoglycemia, iron deficiency anemia, migraines, and sciatica. *Id.* At step three, the ALJ found that none of Ms. Proano's impairments, alone or in combination, met or medically equaled a Listing. *Id.* Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Proano's RFC. AR 1106–16. The ALJ found Ms. Proano had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop, crouch, kneel, crawl, balance, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or hazardous machinery. She cannot operate a motor vehicle for commercial purposes. She can work at a noise level of moderate or less. She can perform SVP 1 or 2 level work, with GED levels in math, language and reasoning of no greater than 2. She cannot perform fast-paced production work. Her work should be performed in the same location every day. She can occasionally interact with co-workers, supervisors, and the general public.

AR 1106–07.

At step four, the ALJ concluded that Ms. Proano was not capable of performing her past relevant work as hand packager or measurer. AR 1116. At step five, the ALJ found that Ms. Proano was able to perform work that existed in sufficient numbers in the national economy—including silver wrapper; cleaner and polisher; and basket filler. AR 1117. The ALJ thus found Ms. Proano not disabled at step five. *Id.*

Ms. Proano did not request that the Appeals Council review the ALJ's unfavorable decision. *See* Doc. 21 at 1 n.2. Thus, the ALJ's decision is the Commissioner's final decision for judicial review. *See* 20 C.F.R. § 404.984(d). Ms. Proano timely filed her appeal to this Court on January 29, 2020. Doc. 1.

5

### IV. Ms. Proano's Claims

Ms. Proano raises three main arguments for reversing and remanding this case: (1) the ALJ improperly rejected the opinion of treating specialist M. Basel Aswad, M.D.; (2) the ALJ improperly rejected the opinions of treating therapist Troy Hill, Licensed Marriage and Family Therapist, and treating social worker Sandtina Melendez, Licensed Master Social Worker; and (3) the ALJ improperly weighed the opinion of examining psychologist Steven Baum, Ph.D. *See* Doc. 19. Because I find that the ALJ failed to give valid reasons for rejecting Dr. Aswad's opinion regarding Ms. Proano's non-physical limitations, I recommend remand. I will not address the other issues raised by Ms. Proano because they may be affected by the Commissioner's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

Ms. Proano argues that the ALJ failed to properly analyze the opinion of her treating physician, Dr. M. Basel Aswad. Doc. 19 at 15–19.[4] She argues that the ALJ failed to give good

---

[4] Ms. Proano argues that the ALJ failed to comply with SSR 96-2p in weighing Dr. Aswad's opinion and with SSR 06-03p in evaluating Mr. Hill's and Ms. Melendez's opinions. *See* Doc. 19 at 1. Neither SSR 96-2p nor SSR 06-3p applies to claims adjudicated on or after March 27, 2017, including Ms. Proano's claim, which was first adjudicated on May 2, 2017, and re-adjudicated on remand on November 29, 2019. AR 1118. The original Notice of Rescission for SSRs 96-2p, 96-5p, and 06-03p stated that these SSRs were rescinded only "**for claims filed** on or after March 27, 2017." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2p, 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017) (emphasis added). However, the Social Security Administration then corrected the original notice of rescission to state that these SSRs were rescinded **effective** March 27, 2017. *See* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p; Correction, SSR 96-2p, 2017 WL 3928297, at *1 (S.S.A. Apr. 6, 2017) (emphasis added). Thus, none of these SSRs apply to claims adjudicated on or after March 27, 2017. *See also* HALLEX 1-5-3-30, Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 1362776, at *5 (S.S.A. Apr. 14, 2017) (advising ALJs not to apply these SSRs to claims adjudicated on or after March 27, 2017 and stating that "the agency rescinded the . . . SSRs and incorporated the policies in those SSRs into the rules applicable in claim(s) filed before March

reasons for giving Dr. Aswad's opinion "little weight," as required in the second step of the treating physician analysis. *Id*. at 16. The Commissioner argues that the ALJ provided "good reasons" for giving Dr. Aswad's opinion "little weight." Doc. 21 at 16–17. The Court agrees with Ms. Proano.

In determining whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. The ALJ first must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300). If the opinion meets both criteria, the ALJ must give the treating source's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (effective March 27, 2017).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

1. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long

---

27, 2017."). Nevertheless, the methodology for evaluating a treating source's opinion continues to require that the ALJ assign controlling weight to a treating source's opinion if the criteria of 20 C.F.R. § 404.1527 are met. Section 404.1527 applies in this case because the claim was filed before March 27, 2017. To be clear, only claims filed after March 27, 2017 are evaluated using 20 C.F.R. § 404.1520c, which omits any requirement to give "controlling" weight to treating physician opinions.

7

       time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (effective March 27, 2017); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. *Watkins* 350 F.3d at 1300.

      An ALJ is not required to expressly analyze each of the six factors. *Oldham*, 509 F.3d at 1258. However, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons in [the] notice of determination or decision for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300 (internal quotation and citations omitted); *see also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017). The reasons must be "tied to the factors specified in the cited regulations" and must be "sufficiently specific." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c)(2) (effective March 27, 2017). "[I]f the ALJ rejects [an] opinion completely, he [or she] must then give specific, legitimate reasons for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1301).

      A. <u>Dr. Aswad's Treatment of Ms. Proano</u>

    Dr. Aswad began treating Ms. Proano on May 5, 2014 for anemia. AR 1617. Ms. Proano had a history of migraines, bariatric surgery, and hypoglycemia. *Id*. Ms. Proano reported

progressive generalized weakness, recurrent headaches and nausea, daily dizziness, occasional abdominal pain, and occasional numbness and tingling in her hands and feet. *Id.* Dr. Aswad diagnosed Ms. Proano with iron deficiency anemia, fatigue, status post-bariatric surgery, and migraine headaches. AR 1618. Physical examination notes reveal that Ms. Proano had pallor, a performance status of 1, full range of motion in all joints, and her muscular power and tone were adequate and symmetrical in all extremities. AR 1617–18. Dr. Aswad prescribed iron intravenously (an "iron IV"), because Ms. Proano had not improved with oral iron supplements. AR 1618. He instructed her not to take aspirin or nonsteroidal anti-inflammatory drugs and to eat small, frequent meals. *Id.*

Ms. Proano returned to Dr. Aswad for six follow-up visits (including five iron IV treatments) in May and June of 2014. AR 581–96. Physical examination notes were much the same throughout this period. *See id.* On May 16, 2014, Dr. Aswad noted that Ms. Proano's fatigue was affecting her ability to work. AR 597. On May 22 and May 29, 2014, Ms. Proano reported that she felt slightly better, and Dr. Aswad noted that she was more clinically stable. AR 591, 594. Dr. Aswad prescribed Ambien 10mg as needed for insomnia. AR 591.

On June 6, 2014, Ms. Proano reported feeling better with more energy. AR 588. On June 9, 2014, Ms. Proano said she felt stronger with a mild headache, recurrent nausea, and occasional numbness and tingling in her hands and feet. AR 584. Dr. Aswad ordered lab work to evaluate her response to treatment. AR 585. On June 16, 2014, Dr. Aswad reviewed the lab results and observed that Ms. Proano was doing better and had shown improvement in her performance status since starting the iron IV treatments. AR 582. Her hemoglobin went up one gram in a month and showed good response to treatment. *Id.* He stated that he would continue her on the iron IV for another month, but it does not appear that she returned for any more

9

treatments in 2014.  *See id.*  He also noted that Ms. Proano would eventually need to be on maintenance iron IV treatments to prevent fluctuation of her hemoglobin and iron levels.  *Id.*

Ms. Proano returned to Dr. Aswad on October 11, 2017.  AR 1666.  She reported shortness of breath that increased on exertion, daily headaches, constant nausea, constipation, and intermittent right flank pain.  *Id.*  She had some dizziness and had been forgetful and sleepy.  *Id.*  She also reported occasional numbness and tingling of her hands and mild lower back pain on movement.  *Id.*  A physical examination revealed mild tenderness over her lower lumbar spine, shortness of breath on exertion, pallor, and a performance status of 1.  AR 1666–67.  Dr. Aswad diagnosed anemia, renal insufficiency, and pregnancy.  AR 1666.  Dr. Aswad noted that Ms. Proano had significant anemia and a high creatinine level.  *Id.*  He ordered bloodwork to check her hemoglobin and hematocrit levels and to determine whether she needed a blood transfusion.  *Id.*  He arranged for Ms. Proano to have a renal and bladder ultrasound to see if the renal insufficiency was due to a urinary obstruction.  *Id.*

Ms. Proano returned on October 19, 2017, complaining of mild dyspnea[5] on exertion, palpitations, dizziness on movement, a constant headache, severe fatigue and easy fatigability, constipation, and recurrent vomiting.  AR 1664.  She also reported occasional numbness and tingling in her hands and mild lower back pain on movement.  *Id.*  Dr. Aswad reviewed her lab work and noted very low hemoglobin and hematocrit levels.  AR 1665.  He started her on an iron IV and assessed likely malabsorption of iron.  *Id.*

Ms. Proano returned to Dr. Aswad four more times in 2017, receiving an iron IV each time.  *See* AR 1650–62.  Dr. Aswad also prescribed Reglan for nausea and Tylenol and

---

[5] Dyspnea is the medical term for shortness of breath.  *Shortness of Breath*, Mayo Clinic, https://www.mayoclinic.org/symptoms/shortness-of-breath/basics/definition/sym-20050890 (last visited Dec. 30, 2020).

Lidoderm patches for back pain. AR 1652. Dr. Aswad noted that Ms. Proano seemed to be doing okay and felt better on November 17, 2017. AR 1655. On December 15, 2017, however, he noted that she still had significant fatigue. AR 1652.

On February 1, 2018, Dr. Aswad noted that Ms. Proano had delivered four days earlier by cesarean section and was very anemic. AR 1648. She reported headaches, blurred vision, mild dyspnea on exertion, dizziness, moderate generalized weakness, nausea, occasional numbness and tingling in her hands, easy fatigability, and lower back pain radiating to her left leg. *Id.* Her hemoglobin was at 7.7.[6] AR 1649. Dr. Aswad drew labs and gave her an iron IV treatment. AR at 1647, 1649. Ms. Proano returned on February 21 and March 1, 2018 with similar complaints and received the same treatment. AR 1641–46. On March 1, 2018, Dr. Aswad noted that Ms. Proano's fatigue was slowly improving. AR 1643. He prescribed Topamax for her headaches. *Id.*

On June 6, 2018, Ms. Proano complained of worsening back pain, occasionally at a pain level of 8 out of 10. AR 1639. Dr. Aswad ordered an x-ray of her lumbar spine to evaluate the cause of the back pain and instructed her not to lift weight or do strenuous activity. AR 1640. He gave her a steroidal injection for the pain and advised her to use Tylenol and Lidoderm patches as needed for pain control. *Id.* He noted that she had pallor and ordered lab work to determine if she had anemia. *Id.* She returned on July 11, 2018 with worsening lower back pain radiating to her left leg and mild weakness in her left leg. AR 1636. She mentioned that the steroidal injection gave her relief from the back pain for two days, but the pain returned and had been severe. AR 1637. Dr. Aswad observed that the x-rays of Ms. Proano's lumbar spine did

---

[6] The normal range for hemoglobin in women is 12.0 to 15.5 grams per deciliter. *Hemoglobin Test*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/hemoglobin-test/about/pac-20385075 (last visited Dec. 30, 2020).

11

not show anything significant, and he planned to order an MRI of the same area due to the signs of nerve compression and neuropathy in her left leg. *Id.* He stated that Ms. Proano reported being more forgetful. *Id.* Consequently, Dr. Aswad planned to check her thyroid functioning and to see if she was anemic. *Id.* He wanted her to return to the office in two weeks for re-evaluation, but it does not appear that she returned until December. *See id.*

On December 13, 2018, Ms. Proano returned with mild dyspnea on exertion, dizziness, moderate generalized weakness, easy fatigability, occasional nausea, and lower back pain. AR 1696. Dr. Aswad diagnosed significant anemia with low iron and gave her an iron IV treatment. AR 1697. He prescribed EMLA cream for her right flank pain and again instructed her to avoid lifting weight or strenuous activity. *Id.*

Ms. Proano saw Dr. Aswad roughly every two weeks from January through August 2019. *See* AR 1669–94, 1698–1706, 1748–57. Her complaints were generally the same: mild dyspnea on exertion, easily fatigued, moderate generalized weakness, lower back pain with movement, and headaches associated with dizziness and nausea. *See id.* Ms. Proano received an iron IV treatment for her anemia on all but one visit. *See id.* Dr. Aswad mentioned on numerous occasions that Ms. Proano felt better with the iron and showed a good response to the treatment, including lessening fatigue. *See, e.g.*, AR 1670, 1685, 1688, 1691, 1703.

Dr. Aswad treated her headaches with at least three medications (Depakote, Topamax, and Fioricet) with varying success. *See, e.g.*, AR 1670, 1675, 1685 (noting Ms. Proano has had a good response to Depakote), 1678 (stopping Depakote because of side effects and failure to improve headaches), 1688 (stopping Topamax because it had not helped), 1751 (prescribing Fioricet in addition to Depakote). He generally treated her nausea with Compazine but gave her IV Zofran one time. *See, e.g.*, AR 1670, 1672, 1678, 1754. He advised that she take Tylenol for

her back pain and avoid lifting weight or doing any strenuous activity.  *See, e.g.*, AR 1670, 1672, 1751.  Dr. Aswad noted in April and May 2019 that Ms. Proano reported difficulty standing or sitting for a long period of time due to back pain and had to change position from time to time.  AR 1670, 1672.  He gave her a steroidal injection to help with back pain on August 30, 2019.  AR 1749.

Beginning in January 2019, Ms. Proano also complained of memory loss and forgetfulness.  *See, e.g.*, AR at 1670, 1671 (progressive memory loss and episodes of confusion), 1677, 1699–1700 (more forgetful, starting on Aricept to improve memory function), 1750, 1753.  On April 26, 2019, Dr. Aswad stated that he ordered an MRI of the brain, but the insurance company denied it.  AR 1672.  He noted that due to her worsening headaches with nausea together with the memory loss, he would try again to get an MRI "to rule out any intracerebral mass or lesion causing these neurologic symptoms and deficits."  *Id.*  Ms. Proano had an MRI on May 17, 2019, and the MRI conclusion notes state that Ms. Proano showed "[m]inimal white matter change suggesting microvascular disease[,]" which was somewhat notable considering her age.  AR 1561.  On July 11, 2019, Dr. Aswad began prescribing Aricept 5mg daily to improve Ms. Proano's memory function and treat her "early dementia."  AR 1700, 1754, 1757.

On August 28, 2019, Dr. Aswad completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) and (Non-Physical).  AR 1570–71.  In the form regarding Ms. Proano's physical abilities, Dr. Aswad opined that Ms. Proano had the following limitations:

- Occasionally lift and/or carry less than ten pounds and frequently lift and/or carry five pounds;
- Stand and walk less than two hours in an eight-hour workday;
- Must periodically alternate sitting and standing to relieve pain or discomfort;
- Occasionally reach overhead, reach at and below shoulder level, handle, finger, push/pull, and keyboard with left and right hands/arms; and
- Never kneel, stoop, crouch, or crawl.

13

AR 1570.  The form asked Dr. Aswad to consider Ms. Proano's "medical history and the chronicity of findings as from 2016 to [the] current examination."  *Id.*

Regarding Ms. Proano's non-physical abilities, the form asked Dr. Aswad to provide "an assessment of how non-physical work activities are affected by the impairment(s), injuries, or sicknesses (e.g. pain or fatigue)."  AR 1571.  Again, the form asked Dr. Aswad to consider Ms. Proano's "medical history and the chronicity of findings as [from] 2016 to [the] current examination."  *Id*.  Dr. Aswad opined that Ms. Proano suffered from "a pain producing impairment, injury or sickness," and that her pain was "severe."  *Id*.  Dr. Aswad also opined that Ms. Proano's impairments caused sleep disturbances, fatigue, and forced her to "rest or lie down at regular intervals."  *Id*.  Finally, Dr. Aswad opined that Ms. Proano had the following limitations affecting her non-physical work activities:

- Marked limitation in the ability to maintain attention and concentration for extended periods (i.e. 2-hour segments);
- Moderate limitation in the ability to perform activities within a schedule;
- Marked limitation in the ability to maintain regular attendance and be punctual within customary tolerance;
- Marked limitation in the ability to maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently;
- Marked limitation in the ability to sustain an ordinary routine without special supervision;
- Marked limitation in the ability to complete a normal workday and workweek without interruptions from pain and fatigue[-]based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

*Id*.  Dr. Aswad indicated that his opinion on Ms. Proano's physical and non-physical limitations were supported by observations.  AR 1570–71.  Regarding her lifting and non-physical limitations, Dr. Aswad also indicated that his opinion was based on medical records.  *Id.*

14

On June 21, 2019, Dr. Aswad sent a letter to Ms. Proano's attorney. AR 1506. He stated that he had reviewed the February 8, 2018 report authored by examining psychologist Steven Baum, Ph.D., and he concurred with Dr. Baum's findings and conclusions regarding Ms. Proano's conditions. *Id.*

### B. The ALJ's Assessment of Dr. Aswad's Opinions

ALJ Fellabaum gave Dr. Aswad's opinions "little weight" and offered two reasons in support. ALJ 1113. First, regarding his opinion concurring with Dr. Baum's findings and conclusions, the ALJ found that Dr. Baum's conclusions were inconsistent with the rest of the medical evidence. *Id.* She further found that "[a] mental opinion is outside the medical expertise of Dr. [Aswad]." *Id.* Regarding his Medical Assessment of Ability to Do Work-Related Activities, the ALJ concluded that "there are no physical exams, X-rays, MRIs, or CT scans on file that show" a level of impairment as severe as Dr. Aswad opined, "and nothing that supports the stated limitations on the claimant's arms." *Id.* Finally, she found the assessment regarding Ms. Proano's non-physical limitations to be "outside [Dr. Aswad's] medical experience." *Id.*

Ms. Proano first argues that the ALJ's conclusion regarding a lack of "physical exams, X-rays, MRIs, or CT scans" is not supported by the record. Doc. 19 at 16–17. The Commissioner fails to respond to this argument in his response brief. *See* Doc. 21; *see also* Doc. 24 at 4. Ms. Proano cites a variety of records discussing physical examinations, lab work, and symptoms that she asserts support the limitations Dr. Aswad assessed. *See* Doc. 19 at 17. The ALJ, however, referred to much of the objective medical evidence that Ms. Proano discusses. *Compare* Doc. 19 at 17 (noting Ms. Proano's pallor and dyspnea with exertion, low levels of iron and hemoglobin, migraines, hypoglycemia, and medications prescribed for migraines and nausea) *with* AR 1103 (finding migraines and hypoglycemia were severe impairments), 1107 (discussing nausea and fatigability), 1110 (discussing Ms. Proano's pallor, dyspnea on exertion, consistent iron infusions

15

and related fatigue, migraines, nausea, and medications for migraines) (citations omitted).  The ALJ also recounted Dr. Aswad's notes that Ms. Proano "has responded well to the IV infusions" and "[h]er energy has increased."  AR 1110 (citing, *e.g.*, AR 582–83, 585, 587–88, 1621, 1641).

Ms. Proano argues that "a lack of objective evidence was **not** a legitimate basis to discount the opinion of Dr. Aswad."  Doc. 19 at 17 (citing AR 1113).  This argument misses the mark:  the ALJ did not simply say that there was a lack of evidence.  ALJ Fellabaum found that there was insufficient objective medical evidence to support the *level* or *severity* of impairment that Dr. Aswad opined.  AR 1113.  Ms. Proano fails to develop an argument to demonstrate that these records, which the ALJ discussed, supported Dr. Aswad's opined limitations.  Consequently, this argument fails.

Ms. Proano relies on two other pieces of objective evidence that bear further discussion:  an MRI of the brain and a prescription for Aricept.  Dr. Aswad ordered the MRI due to Ms. Proano's migraines and memory issues.  AR 1678.  Dr. Aswad prescribed Aricept "to improve her memory function" and memory loss and to treat "the signs of early dementia."  AR 1700, 1751, 1754.  The ALJ fails to discuss the Aricept prescription.  Regarding the brain MRI, ALJ Fellabaum only mentions it in reference to her analysis of the opinion offered by Nicole Mata Martinez, PsyD.  AR 1114.  Dr. Martinez reviewed the record and noted that "the record did not justify a decline in [Ms. Proano's] IQ of over 30 points . . . ."  *Id.*  She goes on to observe that the cranial MRI suggested microvascular disease and cortical atrophic findings, but "this would be insufficient to establish the 30 point drop in IQ."  *Id.* (citing AR at 1561).  Of concern to the Court is the ALJ's failure to discuss whether the MRI could provide evidence of Ms. Proano's memory difficulties, pain, or fatigue, which are relevant to the non-physical limitations Dr. Aswad opined.

Turning to Ms. Proano's argument concerning Dr. Aswad's opinion on her non-physical limitations, Ms. Proano asserts that the ALJ erred in discounting Dr. Aswad's opinion because he opined on non-physical limitations that were outside his area of expertise. Doc. 19 at 18. She argues that Dr. Aswad appropriately opined non-physical limitations that were caused by pain and fatigue. *Id.* I agree.

It is appropriate for an ALJ to consider a physician's area of expertise when determining what weight to give an opinion. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). The Commissioner contends that ALJ Fellabaum properly discounted Dr. Aswad's opinion because he is a physician, not a psychologist. Doc. 21 at 16. Perhaps this argument would suffice if the ALJ had applied this reason solely to Dr. Aswad's concurrence in Dr. Baum's opinion, which focused on emotional and social limitations. AR 1113, 1529–34; *see also* Doc. 21 at 16–17. But the ALJ similarly discounted Dr. Aswad's opinions contained in the Medical Assessment of Ability to do Work-Related Activities (Non-Physical). AR 1113.

In that assessment, Dr. Aswad attributed Ms. Proano's limitations to pain and fatigue, not to emotional or social limitations. *See* AR 1571 (assessment requests physician to offer "an assessment of how non-physical work activities are affected by the impairment(s), injuries or sicknesses (e.g. pain or fatigue)"). Dr. Aswad treated Ms. Proano for her pain and fatigue from at least 2014 through 2019. There is also evidence that he was treating her for memory loss and early dementia, which the ALJ failed to discuss in any detail. *See* AR 1107–16. There is no indication in the record that the treatment Dr. Aswad provided was outside his expertise. As Ms. Proano asserts, "Dr. Aswad is board-certified in hematology[,] . . . which would naturally include an understanding of how fatigue from [anemia] would impact an individual's ability to function." Doc. 24 at 6 (citing *Hematology*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/

17

health/treatment-tests-and-therapies/hematology (last visited Dec. 30, 2020); *Iron Deficiency Anemia*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/iron-deficiency-anemia/symptoms-causes/syc-20355034 (last visited Dec. 30, 2020)).  Because Dr. Aswad was treating Ms. Proano for conditions that caused pain and fatigue, as well as for memory loss, the Court finds he was well within his area of expertise to opine on Ms. Proano's non-physical limitations.  Curiously, ALJ Fellabaum discounted the opinions of Mark Werner, M.D., T. Bessent, M.D., and Shravan Kumar Narmala, M.D. because these providers failed to address the non-exertional limitations caused by Ms. Proano's fatigue.  AR 1111–12.  This is inconsistent with and further undermines the ALJ's reasoning for discounting Dr. Aswad's opinion.

Ultimately, the Court finds that the ALJ failed to offer legitimate reasons to discount Dr. Aswad's opinion regarding Ms. Proano's non-physical limitations.  The ALJ's summary conclusion that Dr. Aswad's opinion regarding the non-physical limitations was "outside his medical expertise," coupled with the ALJ's failure to fully discuss Dr. Aswad's treatment of Ms. Proano's memory loss as well as the ALJ's acknowledgement that fatigue causes non-exertional impairments, renders this reason for rejecting Dr. Aswad's opinion not "sufficiently specific" and unsupported by substantial evidence.  I recommend remand on this basis.

## VI.  Conclusion

The ALJ erred by failing to give more specific reasons for rejecting Dr. Aswad's opinion on Ms. Proano's non-physical limitations, particularly where the ALJ failed to thoroughly consider Ms. Proano's memory loss, pain, and fatigue, and the evidence related to these symptoms.  The Court recommends remand so that the ALJ can reevaluate Dr. Aswad's opinion in light of this opinion.  The Court does not reach Ms. Proano's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand."  *Watkins*, 350 F.3d at 1299.

I recommend that the Court **GRANT** Ms. Proano's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 19) and remand this case to the Commissioner for further proceedings.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge